Good morning, Your Honors. My name is Robert Gibbs for Appellant Ioannis Loukas. I'd like to reserve two minutes for my rebuttal. Let me give a brief background. Loukas was initially admitted to the U.S. as a permanent resident in 1971. He had some criminal convictions in 1980 and was ordered deported for crimes involving moral turpitude in 82 and was actually deported in 89, reentered illegally in 1990, and then Homeland Security came to pick him up and reinstate his 1989 order. He then asserted a fear of persecution if he were returned to Greece. He was interviewed per the procedures by an asylum officer in custody in June of the legal meaning, but did find that there was torture. The asylum officer, however, concluded that he could probably safely relocate elsewhere in Greece. Loukas asked for review by the immigration judge, where he was represented by Counsel Vicky Curry. Before hearing Loukas' testimony, the judge stated that it does not appear that there is any basis to disturb the credible fear finding unless there was some additional information to offer. Curry asked if Loukas could provide a statement. She didn't ask him any direct questions and Loukas testified briefly. The judge asked some follow-up questions, mostly related to fear elsewhere in Greece, and he testified briefly to these questions before he was cut affirming the determination about credible fear and issued a denial that's a record at 12. It's a one-page form, ticked a few boxes, no explanation, although the form provides for an added optional explanation, none was provided. The notice states specifically that there is no appeal available, just in those three terms, three words. There was no discussion on the record of any proper appeal procedure. The government erroneously stated in its 28 J letter that the notice said there was no misleading of Loukas because the form said there was no administrative appeal available. Well, that's not what the form says. The form says there's no appeal available, period. Well, it says two different things. In the paragraph, I guess it's two paragraphs above where you're reading, there is the phrase no administrative appeal is available. You see that? Yes, I see that. I assume that's what the government's referring to. I see. You're also right that a couple of lines down it does say more definitively there is no appeal available. That just emphasizes the that your client wasn't misled by that last statement because he did take an appeal. So an administrative appeal. Right. To the BIA. Right. But, yeah. So it just seems to me, I don't know if it was you or the government who referred to our decisions, and I know Martinez is one, I don't know if Ayala is the other. But the question, it seems to me, is just simply whether at the appeal stage we should deem your client to be pro se, like the Petitioners in those other cases, or whether, because he was represented by counsel before the immigration judge, which is different from what happened in those other two cases, whether that's a basis for distinction. Maybe you can help with that. I don't think that's a basis for distinction. First, because in this case, Lucas' counsel didn't represent him after the judge's decision entered. Lucas was detained, which adds the difficulty on his part in terms of figuring out what he should have done. The form is confusing. And in the last case that you referenced, the Martinez case, the Court's decision doesn't require that the person be pro se. It says that's an added reason for the problems of this confusing notice. But they said we consider many factors. Yeah. No, you're right. I mean, but what was driving that decision was the fact that this kind of form, for the reasons you've already alluded to, would be confusing to someone who was pro se. It should most definitely not be confusing to a lawyer, especially not a lawyer experienced in immigration proceedings. You would agree with that, right? That's right. Okay. So that's why I say if, for example, your client's lawyer had stuck with him and filed the notice of appeal to the BIA, I don't think it's a very sympathetic case. Sure. Right? Because it's that that lawyer should have known not to do that and instead should have known to come straight to our court. I think your best argument, it seems to me, before us is that essentially he had been abandoned or, you know, his lawyer had left him by the time the appellate proceedings began. And so he was left to his own devices to figure out what to do. And so, just like the Petitioners in the other cases, he was pro se and he was misled by this. That's I think if you're that was suggested in the two cases we're discussing here, that the board or the EOR write a coherent, clear statement on this form would be the way to go. That's what the Martinez panel said is there should be a clear statement. And I think that's rather than some sort of all the facts analysis, I think it's better probably to have a clear bright line test unless the form specifically says you can go to the Ninth Circuit. I think there should be a fine. The court should hold that. That's not the test. That's that should be the test. It's not met here. It's going to be a clear way to analyze these cases. Mr. Gibbs, doesn't Martinez's case essentially find us to conclude that there is jurisdiction? And so shouldn't we be concerned primarily with whether there's an objective basis for his fear? Yes, I think you I do think Martinez and Ayala control this case and that there is jurisdiction. So the court should turn to whether the government's preserved its arguments around the merits of the case. I don't think that they did, but we can get on the merits of the case. Let me ask you this. When was the date of the conduct that the asylum officer thought was was torture or horrendous? When did that occur? It would have been quite a few years ago, Your Honor. I don't know the exact date. My general recollection was that that your client was maybe 13 years old at the time and is, you know, well into middle age now. So it was decades and decades ago. Yes. So why should we feel, apart from your waiver argument, why should we feel there's an objective basis for fear today? Well, I think one there's a couple of problems here. One was the the courts, I mean the immigration judge's level of scrutiny on this question. The respondent testified briefly about what had happened more recently to other family members and of the consequences of being of the stigmatization of him as gay that would carry forward through to the present. But the judge cut off his testimony. The government, in its brief at page 20, in the last footnote, suggests or accedes to the fact that the court had cut off his testimony. Well, let me ask you, is is your position that there's specific hostility towards him on the part of the police or that there's a general sort of countrywide hostility to gays that puts him in jeopardy? Which of those positions are you taking? Well, specifically the police. But there would be, in terms of resettlement or relocation, there's always a question of other reasons why the person, considering all the factors, couldn't be relocated. So even if the past persecution or past torture related to a specific event, specific persecutor, if there are reasons in the asylum context you look at, for example, the person would have many, many other collateral problems, for example, anti-gay prejudice throughout the countryside, then that's a basis to conclude that relocation isn't reasonable. Okay, you want to save some rebuttal time? Yes, I should do that. Thank you. I'm going to give you an extra minute on rebuttal because I preempted some of your argument. Thank you much. Okay, let's add a minute to that. All right, thank you. Okay, now we'll hear from Mr. Nelson, representing the Attorney General. Good morning, may it please the Court. My name is Aaron Nelson for the Attorney General. Your Honors, when we briefed this case, it was clear to us that the Court lacked jurisdiction over the petition for review in light of the final, the operative final order in this case being that of the immigration judge, based on the specific nature of reinstatement proceedings. We believe that that jurisdictional defect remains even after the Court's decisions in Ayala and Martinez, and I say that because of important distinctions between the Ayala and Martinez. The panel has briefly touched on some of these, but I'd like to reiterate them if I may. In Ayala and Martinez, the aliens there, the antecedent removal order, stemmed from expedited proceedings where they did not present a claim for relief, where they were not represented, and Mr. Lucas's case, he was in deportation proceedings after he had been conferred lawful permanent resident status, and lost that status for a long history of very serious crimes. He appeared before an immigration judge in Montana, I believe, and was represented in those proceedings. So, whereas in the previous cases, we have someone in the expedited removal proceedings who perhaps was turned around at the border, or there was a very short process in those cases, in this case, he was represented in what would have been then deportation proceedings. I think that's an important distinction, because when we look to what is the order that's being reinstated, what is the genesis there, I believe that it's a distinction that merits a different outcome here. In addition, the petitioner here was represented by counsel in his asylum interview, which is not often done, and certainly was not the case in Ayala and Martinez. And as your Honor already mentioned, before the immigration judge, the petitioner here had counsel, was represented there, and we believe when the immigration judge on that date issued her order, he received a copy of that order in real time through his attorney. And we believe that that changes the character of this case, because, again, as your Honor referenced, a represented party should know through counsel the path forward. But he tells us that his attorney was no longer representing him at the time the appeal was filed, the wrong appeal was filed, right? If he wasn't, then doesn't he drop back into the same position as the Martinez and Ayala? I guess our position would be, you're correct, that when he filed the appeal in opposition to the clear face of the order of the immigration judge, when he filed the appeal to the board, he was pro se, and we have no idea what his attorney told him that day or if he had any conversations whatsoever that would have driven that. Is it easier just to clean up a letter, just to make the letter clear and state exactly what the person should do? Sometimes the attorneys need it, too, don't they? I concede that there can be ambiguity there, especially for a pro se individual. But I would also like to bring to the Court's attention that the judicial review statute at 8 U.S.C. 1252 doesn't specifically mention immigration judges, it doesn't specifically mention the Board of Immigration Appeals. It talks about final orders of removal, and perhaps I'm being redundant here, but the operative final order that we believe precludes jurisdiction by this Court was the immigration judge's reinstatement order, and the clock started ticking then, and as we say in our brief, Mr. Lucas was on notice that this is a final order, as it says, and pursuant to the regulation, no administrative appeal is available. Opposing counsel would have the immigration judge have an affirmative duty to tell a represented litigant the exact path forward, but he has not that duty. So we believe that, as we said in our 28-J letter, that in light of Ortiz-Alfaro and the fact that he was represented when he received, in real time, the reinstatement order, that he should have known the path forward, and his failure to timely petition to this Court from that decision is fatal as a flaw. Let's say that we don't agree with your position on that front, then what, in your view? Because you more, not you personally, but whoever filed the brief, more or less gave the back of the hand to the merits and just addressed it in a brief footnote. I don't even know if that's sufficient to preserve the government, you know, the Attorney General's opposition. So what do we do with respect to the merits if we don't agree with you on jurisdiction? You know, I concede that the merits were all but waived here, and in that hypothetical, I would submit to the Court that we would like an opportunity to redo the case and argue the merits anew. Well, my feeling is if you want to argue the merits, you're here today, and that's what you should do now, and the panel will deal with the waiver later, you know, in its assessment. But if we don't think there was a waiver, and we'd like to get to the merits, what is your position? Well, in light of our jurisdiction-only argument in our brief, our position on the merits of the claim would be that this is an individual who could have brought the facts of his claim for relief before an immigration judge in Montana, because as one of the panel mentioned, the harm that he presented in the asylum interview happened in the early 1960s. So he has now explained why, when he was in deportation proceedings, he failed to raise this in the first instance. So we would say that he, on the merits, he hasn't made a claim because of the context of the record here. The individual who caused him harm would likely be dead, and he hasn't presented a case for why he has a likelihood of torture in Greece. And in a nutshell, I think that's what our position would be. Well, can I just suggest that, as I read the petitioner's opening brief, the quote-unquote merits of this petition for review aren't really the merits of the underlying determination. He just raises two due process, procedural due process arguments. So I guess I assume the right remedy here, especially if you're not prepared to say anything more about the merits of these due process arguments, is to just do what we did in Martinez and to say, okay, well, you didn't contest the fact that the two due process arguments are that, number one, the I.J. didn't provide a fulsome explanation for the reasons, and the other is that the I.J. cut him off before he had the chance to tell his full story. Wouldn't the remedy be to just send it back to the I.J. to do it over again and cure those two due process violations, and then presumably he would then petition straight to our Court, and we could then reach the real underlying merits? Your Honor, if the Court finds jurisdiction and finds that this case is more like Martinez and doesn't accept our argument, then we would agree that remand would be the best way to move forward so that the petitioner, in that context, could present a more fulsome claim and the government could respond more fully to it. Okay. Thank you very much. Just one additional reason why I think remand would be the appropriate order from this Court, which is the Maldonado case that we cited about the changed case laws and en banc Ninth Circuit decision that issued a year after this evidence, the immigration judge is supposed to consider on a relocation question, and really change the way that those are to be analyzed such that specifically the applicant did not have to prove that relocation was impossible. So it changes in some way, significant ways, the case law on how those immigration judge decision, a decision which was marked by its lack of clarity and specificity, and which erroneously said there was no torture, we think it's appropriate for remand, if for no other reason, and for the Court to immigration judge to apply Maldonado. Thank you very much. Thank you, sir.  And we thank both counsel for their excellent arguments. We appreciate Mr. Gibbs coming here from Seattle, where he practices, and Mr. Nelson coming here all the way from DC. So thank you both.
judges: Gould, Watford, Rothstein